Your argument next in Case 2583, Jules v. Andre Balazs. Mr. Unikowski. Mr. Chief Justice, and may it please the Court, in Badgero v. Walters, this Court held that Federal courts lack jurisdiction over applications under Sections 9 and 10 of the Federal Arbitration Act unless an independent jurisdictional basis appears on the face of the application. In this case, the Court should hold that Badgero's rule applies to all Section 9 and 10 applications, regardless of whether a preexisting suit is on file. Nothing in the FAA distinguishes between those Section 9 and 10 applications that are associated with a preexisting suit and those that are not. Moreover, Section 8 of the FAA contains explicit jurisdictional anchor language that Sections 9 and 10 lack. The Court should infer that this textual disparity is intentional, much as the Court relied on a similar inference in Badgero. The Court should resolve this case based on the text of the FAA rather than based on Section 1367's related-to standard. But if the Court reaches that issue, it should hold that there is no common nucleus of operative fact between the underlying suit and the Section 9 and 10 applications, which concern an arbitration award that did not exist at the time of the original Federal suit. As Badgero put it, the original — the underlying dispute is not now at issue. In Kokanen, this Court held that a settlement dispute is insufficiently related to the underlying dispute to warrant the exercise of ancillary jurisdiction, and the Court should rely on similar reasoning here in rejecting jurisdiction. I welcome the Court's questions. Was there a pending Federal case in Badgero? There was no pending Federal case in Badgero. So you think that's a difference? Well, that is indeed a factual distinction between this case and Badgero. Okay. So your client brings the Federal case, right? Yes. The Court then enters a stay so that the arbitration can take place? That's correct. The arbitration then is decided, and the parties come back to that very same Court to confirm the arbitral award? That's correct. Or decision. And you're saying now that the jurisdiction of the Court that you invoked is inadequate to decide this? That's correct, Your Honor. There is — I'm sorry. Don't you think there's something odd about that? I don't think so. I think our position falls pretty cleanly. Do you think that that's consistent with Badgero? Yes. I think that the Badgero rule — admittedly, in the Badgero case, there was no original lawsuit, and in this case, there is. And that's why this is a separate case from Badgero, but ultimately, I think the same rule should apply. So in Badgero, there was no jurisdiction, so the Court said that there's no independent jurisdiction. And here, you have a pending case in which the district court stayed its suit, its action pending the arbitration. And you say that's similar to Badgero, where there was no case? No, it's a different case, Your Honor, but I think the same rule should still apply. I think the same rule should still apply, whether or not you start with the text of the FAA or whether you start with Section 1367, as Respondents would advocate. So maybe it's helpful if I start with the latter point before turning to the text. What's the purpose of the stay? The purpose of the stay is for — if the case comes back and is not resolved in arbitration. So if you look at the text of Section 3, Section 3 says that if it turns out that the parties are in default of the arbitration, so the arbitration doesn't resolve the dispute, then the parties can come back to the Federal court and adjudicate the dispute. Or in the Spazzieri case, the Court offered the example of a case where the arbitration breaks down. And so the case is stayed and the case might have to be reactivated in Federal court. But here, there's an arbitration award. The arbitration is wrapped up, and so under Rule 8 of the Federal Rules of Civil Procedure, the Court should dismiss the Federal suit. It's quite similar to defense. Counsel, doesn't Rule 8C1 say that an arbitration has to be pled as an affirmative defense? So why aren't we thinking of it that way? Meaning, Rule 8 says in a litigation where an arbitration is sought, and that's what the Federal action here was. It was a Federal suit. The defense was arbitration controls. Why isn't this just a motion to confirm that the claim can't go forward? So I think that dismissal would be appropriate, and because at the start of the lawsuit No, but you're arguing something else. You're arguing that not dismissal is appropriate, but confirming the arbitration award so it is final and settles the matter is not. Because that's what you're arguing. We're arguing, Your Honor, that the Court doesn't have jurisdiction to confirm the award as opposed to dismiss the Federal case because confirming the award is How can you dismiss it if you don't know if the arbitration award will be sustained,  Well, the vast majority of arbitration awards are never subject to confirm or vacate proceedings. Well, but the point still remains, how does a court know that it's a defense to the It has decided that it's a valid award. No, because the award itself is the defense. It functions like a release. So if a plaintiff files a lawsuit and the defense Well, you can't claim an arbitration award that has been vacated, correct? That's correct. So what a court could do, so a court might not know if the arbitration award is going to be later subject to confirm or vacate proceedings in State court. That could take several years. And so what a court would ordinarily do is dismiss the case theoretically if the award is vacated, they would typically re-arbitrate it. They wouldn't necessarily go back to the Federal district court. I'm sorry, Your Honor. No, no. Counsel, I'm having trouble understanding your lawsuit because I thought Spicerini answered it already. In Spicerini, what we said was where a court does have proper jurisdiction over a Section 9 or 10 application in a pre-existing lawsuit. And there was under Section 3 a pre-existing Federal claim, so they had proper jurisdiction. The court that stayed the action can and should, for efficiency's sake, adjudicate those applications as motions in the existing lawsuit. So this is a motion in an existing lawsuit. That's what Section 9 and 10 are. Over a claim that had jurisdiction, age discrimination, why isn't this just a motion to confirm that? Well, Your Honor, so in Badgerill, the court addressed the language in Section 6 about motions that Your Honor just referred to. The court said that it's not a motion. It says that the court's going to treat the application as a motion for efficiency's sake. So I don't think that the language in Section 6 carries the day. But what Badgerill also said, it said something like jurisdiction to decide a case includes jurisdiction to decide a motion in a case. And isn't that what we have here? And Badgerill distinguished that from using the look-through method. It's just saying if you have jurisdiction over a case, you have jurisdiction over the motions in the case. That seems pretty, you know, just a truism. And isn't that what's involved here? I don't think so, because the court has jurisdictions to decide motions. It's just not necessarily every single motion that would result in the court entering a judgment that exceeds its jurisdiction. Because the judgment that Respondents are asked in the court to enter is not merely a judgment of dismissal, which of course the court can do. It's essentially transforming the arbitration award into a judgment which would allow Respondents to enlist the court to execute the judgment against a case with  Well, so explain to that. What category of motions should not be included in the statement of if you have jurisdiction over the motions in a case? What category of motions is excluded from that? Motions that would cause the court to enter a judgment that the court doesn't have jurisdiction to enter. Because in this case, the court undoubtedly had jurisdiction to dismiss Petitioner's suit based on the fact that an arbitration award existed. What the court didn't have jurisdiction to do is enter an award in what was essentially a breach of contract suit that was beyond the court's jurisdiction. So absolutely the court could have dismissed the claim, but we think there's a difference between dismissal of a claim and transforming what is fundamentally a contract dispute into a judgment when the court lacks jurisdiction over that case. But the question — that's begging the question, I think, because isn't the purpose of Section 9 to give the court the ability to do that, to say that that's exactly what is supposed to happen? I mean, I've been a little confused by some of the representations that you made. You suggested that the vast number of arbitrations are not subject to, quote, unquote, confirm and vacate proceedings. And I guess to the extent that you're suggesting that there won't be a dispute about whether or not the award is to be confirmed, that's true. But in most cases, when you have an arbitration, isn't there a circumstance in which some court, whether the Federal court or the State court, is asked to convert the award into a judgment so that it can ultimately be enforced? No. That's actually quite rare, Your Honor. The vast majority of arbitration awards do not result in subsequent judicial proceedings because it's so hard to vacate an arbitration award that in almost every case, the parties adhere to the award. Usually when the defendant wins the arbitration, you know, usually the defendant doesn't come to court to confirm because the arbitration award itself generally has res judicata. All right. But in a situation — this goes back to Justice Thomas' initial question, in which we already have a preexisting lawsuit related to these parties, related to an underlying dispute that then gets resolved by arbitration, it seems peculiar, I think, that you would suggest that Congress set these rules up to insist that another court be involved in confirming that award so as to close out the initial case. I mean, the circumstances — you would, I think, have to agree that when we have an existing lawsuit that was stayed for the purpose of arbitration, it can't be one of the situations in which the arbitration can happen and everybody goes off into the sunset and the original court doesn't know what happened. So there has to be some closure to this. And I think under your rule, the closure you're positing comes from another court confirming the award, and that just seems very odd. I don't think so, Your Honor. So, first of all, I think that the closure happens when the award occurs and the parties come back to the Federal court and say, look, we were able to resolve our dispute in arbitration. There's no more pending claims. There's no partial subset of claims that were stayed. The entire case is over. But you do agree they have to come back to the Federal court. Of course they have to come back to the Federal court. All right. But somehow you're saying that having exercised jurisdiction over this matter from day one, at your request, Justice Thomas reminds us, the only way it gets resolved from the standpoint of wrapping this up is if the parties are just coming back to notify that another court has been engaged to do some sort of confirmation. Are you saying the confirmation doesn't have to happen at all? It doesn't have to happen at all. There's a four-year statute of limitations, at least in California, on the confirmation proceedings. The Court's not just going to sit there for four years to wait to see whether someone is going to try to do something. But if the parties want it to happen, you're saying they cannot ask the court that took original jurisdiction over it to be the one to confirm.  That's correct. They should go to the State court, and the court is free to stay the dismissal of the case if it knows that there's ongoing confirmation or vacator proceedings in a different court. But all the court cannot do is transform what is fundamentally a breach of contract suit into a judgment. Mr. Unikowski, why wouldn't there be ancillary enforcement jurisdiction, to be specific, of the kind that the Court talked about in Kekonan? It seems to me that if the parties come back, you know, Kekonan envisioned a situation in which the district court could, under 41, make it part of the terms of the settlement agreement that the district court could retain authority to enforce the agreement, and that that wouldn't have been a problem. There would be no separate basis of jurisdiction there, right? It's a distinct action. It's a contract action, in essence, that's distinct from the underlying suit. It wouldn't be 1331 or 1332, for example. Why couldn't something like that theory apply here? So, first of all, that's not Respondent's argument, and that's not what the Court did in this case. The Section 3 order did not purport to retain jurisdiction to confirm a follow-up arbitration award. It just said, pursuant to Section 3, that the case will be stayed until arbitration has been had. I also don't think a court could do that. I don't think a court could circumvent the limitations under Section 3 by entering an order that's broader than Section 3, especially given that you have Section 8, which explicitly authorizes the retention of jurisdiction in maritime cases, and Section 9 does not have similar language. I also think that a court doesn't have unlimited authority to retain jurisdiction under Rule 41. I think the analysis is somewhat similar to the analysis in cases involving consent decrees. Like, so in certain cases, a court can take a settlement and embody it in a judgment, but the court can't just rubber stamp it. The court has to make an independent assessment of things like whether or not the settlement advances the objectives underlying the statute, and only then can it really give the settlement the imprimatur of the court's authority. And so we think that, you know, a similar analysis would have to happen here, except it can't, because in an arbitration award, the court really isn't considering on its own the viability of the award. It's just assessing whether the arbitrator exceeded its powers. So in a nutshell, I don't think the Court did that in the Section 3 stay. I don't think the Court could have done that either in the Section 3 stay. When it comes back, if the case were a Federal question case to begin with, and it comes back, there's no Federal question, therefore it goes to State court, correct? So what happens is the court, yes, so there was a Federal question at the outset. Right. And so the arbitration award functions like a release or res judicata. It's a defense saying this case has been resolved in a different form. Got it. So the confirm or vacate, though, goes to State court in those cases? Yes. If you come back and the original jurisdiction was based on diversity of citizenship, you still have the diversity when you come back. Correct. The face of the application in that case. Then you go to Federal court. You can, because there's an independent jurisdictional basis on the face. Which just strikes me as odd that if the original case to Justice Thomas' question was based on Federal question jurisdiction, you'd end up in State court to confirm or vacate, whereas if the original jurisdiction was based on diversity and that still exists at the end, you would end up in Federal court. That seems like an odd result. I don't think it's odd because the follow-up dispute at its core is a contract dispute. The parties aren't debating any more the merits of the Federal claims. That's been resolved by the arbitrator. All the parties are addressing — There's still a pending Federal case based on Federal question jurisdiction. That's true. But once the arbitration is over and there is an arbitration award and we're at the stage where the court is considering a Section 9 or 10 application, the issue is not whether or not the Federal claims have merit or not. That's already been resolved by the arbitrator. The issue is whether the arbitrator committed fraud, exceeded its powers, things that have nothing to do with the Federal claims. And Badreau's insight from our perspective is that at core is a contractual dispute. I'm sorry. Please. Go ahead. That was my question, too. And I'm struggling to come up with a reason why Congress in the Federal Arbitration Act might have wanted diversity cases to remain in Federal court for confirmation proceedings, but Federal question cases to go to State court. You're a very clever fellow. What might you imagine Congress's policy judgment would have been for that? I think it's a similar policy judgment that underlay Badreau, and I do recognize that in Badreau there is no preexisting Federal suit. But nonetheless, in Badreau, the underlying question was Federal. The question was whether the arbitrator's resolution of Federal claims complied with the Federal Arbitration Act. And the Court said that at core that's a contract dispute. And courts only have jurisdiction over contract disputes when the requirements for diversity of citizenship are satisfied. And so that's ultimately the distinction. And as a policy matter, I mean, what's happening in this case is ultimately the Court is entering a judgment. The reason people typically seek to confirm arbitration awards is because they want a judgment they can execute on. That's why most confirm or vacate proceedings are when the plaintiff wins, and they have a judgment, and they want to use the authority of the Court. And so, you know, State courts are very good at entering judgments and enforcing them. That's why Congress made a different decision in Section 8 cases where the Court seizes a ship, because in that case it makes perfect sense for the Federal court to enter a judgment because it already has possession of the ship. So I think that's a sensible reason Congress would have said that we want the Federal court to enter the judgment in America. Thank you. I think Justice Kagan will have more.  Go ahead. Am I right, Mr. Unikowski, that your understanding of where Section 5 and 7 would continue to apply? It's really only in these diversity suits again? I think so, but I think there's an argument possibly the other way that wouldn't apply in this case. So I think the correct answer, like my ultimate bottom line position is that yes, there has to be an independent jurisdictional basis in Sections 5 and 7. You know, Section 4 has look-through jurisdiction. Section 8 has the anchor. And if such language isn't present, there needs to be an independent jurisdictional basis. Now, I think there's a reasonable contrary argument that wouldn't apply here under the second head, as Kokanen puts it, of ancillary jurisdiction. There is an argument theoretically available that if the Court compels arbitration but there's no arbitrator, appointing an arbitrator is a way of enforcing the order compelling arbitration. So I think a court could reach that conclusion, which wouldn't apply here because the arbitration is over, like the order compelling arbitration has been carried out. So I think the Court can reserve this question until the next time it has the opportunity to decide whether a particular type of arbitration. Here the Court didn't order arbitration because it thought it didn't have the power to. That's correct. It stayed, but I argue. So under your theory, your answer to Justice Kagan is it doesn't have any power. No, but I think arguably even in a case where the Court stays pending arbitration like this one, the premise of the stay order is that the arbitration will happen, otherwise the arbitration will last forever. And so a court, this is not my bottom line answer, but I think a court could say that the Court is in a sense enforcing the order staying arbitration by appointing an arbitrator to make sure the arbitration happens. That's just a way a court might avoid that result. But ultimately I think that the FAA says what it says. The Court, you know, Congress included jurisdictional language where it wanted  the arbitration to happen.   Counsel, no one. Go ahead. No one, I think, disputes the Court's jurisdiction to enter a consent decree. So why isn't confirmation of an arbitral award analogous since both involve taking a private resolution and making it a judgment of the Court? Because consent decrees require a degree of judicial involvement that doesn't exist when the Court confirms an arbitration order. There is a rich body of law from this Court about when a court can enter a consent decree. And the Court has made clear that the Court has to undertake an independent assessment of considerations such as whether or not the terms of the consent decree advance the objectives underlying the law at issue in the complaint and whether there is a sufficient nexus between the terms of the decree and the  Obviously there is a lot of discretion to the parties, but still precisely because it's a judgment of the Court, the Court has to undertake an independent assessment of the terms. That doesn't really happen under the FAA. But is that just because it has been those kinds of assessments have been given to the arbitrator and sometimes even at the Court's direction? I don't think so. When the Court confirms an arbitration award, the Court isn't independently assessing, for example, whether the arbitrator's award furthers the goals of Title VII or the ADA or whatever Federal statutory claims are being advanced. The Court isn't sort of taking a second look at the merits. All the Court is doing is assessing whether the arbitrator exceeded its authority under the arbitration agreement and engaged in certain specified types of misconduct. So I think that the degree of judicial involvement under the Section 9 and 10 is much less than what this Court has said is necessary to justify the Court transforming a pure settlement into a consent decree. So that's why I don't think that analogy carries over. The Second Circuit and the District Court both thought that our statement in Cortes-Byrd kind of made this simple because there we said, we have, however, previously held that the Court with the power to stay the action under Section 3 has the further power to confirm any ensuing arbitration award. So I know you're going to say that was out of context, but that statement on its own would resolve this, wouldn't it? On its own, that statement is favorable to Respondents, and I'm going to say what you said I was going to say, which is that if you read that whole paragraph, it's actually making a very different point, which I think ultimately supports our position, which is that Congress wouldn't have intended the Court's ability to decide a Section 9 or 10 application to turn on whether there was a preexisting suit on file, right? So the question in Cortes-Byrd was one of venue, whether venue existed only in the jurisdiction in which the arbitration occurred or was broader than that. And the proponent of narrow venue conceded in that case that if there was a Section 3 stay, that Court could exercise jurisdiction over the Section 9 and 10 application but argued for a different result if there was no Section 3 stay. Different question. Section 10 in State court. Thoughts? Yes. So, I mean, we view that Sections 9 and 10 as joined at the hip, like Section 9 refers to confirming the award unless there's a Section 10. The standard set forth in Section 10.  The Court reserved that question in background. Yes. What are your thoughts? My thoughts are that it doesn't have to be exactly identical to the Federal standard, but if the Court. Does it have to be close? Pretty close. Like, if the Court authorizes. Pretty close? Yes. Basically pretty close. I mean, the Court hasn't addressed this. Look, if the State court authorizes de novo review of an arbitration award. The State court theoretically could have very different standards than the arbitration awards thrown out, but then the new suit, again back to Justice Thomas' first question, not the new suit. The suit comes back to Federal court then after the State court's thrown out the arbitration award. So typically that's not. It's a strange system. I don't think it would come back to Federal court. Typically what would happen is they would arbitrate the claim again. Like the effect of, for instance. That depends what the State court said in tossing the arbitration award, right? Well, not really, because if the Federal court, if the case is arbitrable, then, and the State court says there's some defect in the arbitration proceeding, but the case is still arbitrable, you'd presumably go back and re-arbitrate. Theoretically, the parties, for example, might stipulate that if the award is vacated, they're just going to give up on arbitration. And then they could go back to Federal court, either file a Rule 60 motion, or the Federal court could opt to wait to dismiss the case until the State court's proceedings are done, and it could be reactivated in Federal court. Do States have pretty close standards? They do. I don't think that's, I'm not aware of any State that diverges significantly. Like there's like minor wording differences sometimes. I think there would be an obvious preemption problem. As I said, the State authorized a novel review of an arbitration award that would be contrary to Section 2 substantive standard that arbitration agreements should be enforced. But if there's like very small distinctions or differences in things like the statute of limitations, I don't think that those types of differences would necessarily be.  I have another question also just about practice here. Are most of these 9 and 10 applications brought as freestanding applications, or are they connected to a Federal suit in the way that this one was? I mean, I've read a lot of cases. I'm not sure of the empirics there. I think they're mostly brought independently, because usually there's not that much dispute over whether parties have to arbitrate. But I've seen it on both sides. I don't know what a specific number is. And is there a way in which your theory or Mr. Geiser's theory would push the practice in one direction or another in a way that either made sense or didn't make sense? So, yes, I appreciate the opportunity to say that. So one of the concerns about Respondent's position is that it will create an incentive in every case to file a freestanding motion to compel arbitration or do something else to get to Federal court if you want to have that anchor. And this Court remarked on this in both Vaden and as well as Justice Breyer's dissent in Badgerow. Vaden said it would be a totally artificial distinction between to distinguish between Section 9 and 10 applications associated with preexisting suits and not so associated and Justice Breyer's Badgerow dissent reiterated that language, that the jurisdictional anchor would create that totally artificial distinction. Thank you, counsel. Justice Thomas, anything further? Justice Alito? Well, just out of curiosity, do you think we should ask Claude to decide this case? No, I adhere to the wise judgment of this Court. Justice Sotomayor. You're suggesting to me that people who have stays in place typically don't move that court for motions to confirm the award, that they usually go to somewhere else for  No, I'm suggesting that usually motions to confirm the award aren't necessary, especially when there's a stay. No, no, no, I understand that. But when there is a stay, what's the number of cases that go to another court? Well, there's a circuit conflict on this issue, and it's true that most of the courts have gone with the Respondent's position, but most of those opinions are sort of not very — there's not a lot of reasoning. It doesn't matter, but the vast majority — I'm not aware of a Section 3 stay case where the other side has come to a different court to confirm the award. Well, I mean, there's a circuit conflict on this issue, and — So where they're not permitted, that's what drew us to take this case. Where they're not permitted to, they can't. Right. But the point is, when they are permitted, they stay in the court where the stay is granted, correct? Right. It's likely that if the Court rules for Respondents, people don't want to pay a second filing fee, so they'll probably go — All right. You talk about your fear of people choosing litigation, choosing a venue, and not arbitrating in order to get a venue. Yes. You have to be Houdini and — not Houdini. You have to have magical powers to know whether you're going to win or lose, right? No. You can just bring a freestanding Section 4 motion to compel arbitration, which this Court held you could do in Baden. Well, you didn't bring it. No. You had to have the foresight. You went to New York, a jurisdiction that had no connection to the dispute, where the dispute happened, and only because you've lost in New York are you wanting to get out of New York. Your Honor, the facts of this specific case don't present the practical concern. Well, but they present the practical concern that your fear requires a lot of predictions that parties are unlikely to engage in, because right now, most of them don't fight where they're going. They just do arbitration, and most of them don't fight awards. They accept them. Right. But the point is, look, if I am advising a client, and the client says, we're about to arbitrate, and we might need down the road to file an application to confirm or vacate the award, and the client says, I'd rather be in Federal court, in every case, I would say, let's go to Federal court. You know, I practice a lot of arbitration law. I don't know a client who ever said that to me. I want to file in this court. In case I win the award, I want to be in Federal court. Thank you, counsel. Justice King. Justice Gorsuch. Justice Kennedy. Justice Barrett. Just as a practical matter, under your theory, the stay is in place. You have the award. You want to confirm it. Do you have to go get a, do you file a motion to dismiss first in the district court before you go to the state court to try to get the arbitral award confirmed or vacated? No, I don't think you necessarily have to do that. I don't think there's a specific order of operations, because we view this as a non, like the arbitration award is a non-jurisdictional defense akin to res judicata or release. I think the Federal court could opt, if it knows that there is an ongoing vacate or confirmed proceeding, it could opt to just wait to dismiss the Federal suit until those proceedings wrap up. I don't think there's necessarily an order of operations that's required. Okay. Thanks. Justice Jackson. Can I just take you back to the original questions that I think Justice Sotomayor and Justice Kagan asked about treatment of this as a motion? Yes. And section 6, and I know that you referenced Badgerow's statement that the applications will get streamlined treatment as a motion. But Badgerow cited a case called Hall Street Associates for that proposition. It quoted from Hall Street, and that entire quote says we'll get streamlined treatment as a motion obviating the separate contract action that would usually be necessary to enforce or tinker with an arbitral award in court. So it appears at least as of Hall Street, the court understood the way that this worked, that the reason why you're treating this as a motion is that it would mean that you wouldn't need another contract action in another court in order to enforce the award. Why doesn't this undermine the argument that you're making now? Because I interpret that language in Hall and Badgerow differently. Section 6 does not distinguish between applications in a freestanding case and applications that are associated with a preexisting case. It's just a single rule that covers all FAA applications that says that they'll be treated like a motion. And what the Court said in Badgerow was what that means is not that it is a motion in a case in which there is jurisdiction. It will just be treated like one. I understand. But in Hall it says the reason why it's treated as a motion is because it will obviate the separate contract action. And what I'm confused about is how that could be consistent with your vision, which would require a separate contract action. Well, I think there has to be jurisdiction over the contract action. If there isn't jurisdiction, the Court couldn't hear it. And if there is jurisdiction, then yes, the Court could hear it as a motion and it would save a lot of time and effort. And Section 9 and 10 has these very specific service of process provisions. And if the defendant is within the district, it's sort of easier to serve process than it is normally. And I think Section 6 is similar with that streamlined procedure, but that doesn't mean there is jurisdiction. It simply talks about what happens if there is jurisdiction. Thank you. Roberts. Thank you, counsel. Mr. Geiser. Thank you, Mr. Chief Justice, and may it please the Court. Consistent with decades of established doctrine, Federal courts with preexisting jurisdiction may resolve related claims in the same pending case, and nothing in the FAA or Badgerow overrides the ordinary jurisdictional rules in this setting. A Federal court already vested with original jurisdiction has obvious power to hear FAA motions in that pending action. There is no need to ask if there is a redundant basis for original jurisdiction because jurisdiction already exists. And any FAA motion falls squarely within a court's supplemental jurisdiction. This follows under the plain text of Title 28. It adheres to ordinary jurisdictional principles, and it promotes the FAA's purpose and objectives, including facilitating the judiciary's supervisory role in enforcing awards. Petitioner's contrary approach contravenes Section 1367. It is at odds with Badgerow, and it invites unworkable and untenable results. Respondents are simply asking to go back to the same court to enter judgment and dismiss petitioner's case without having to bifurcate these proceedings, file new state law litigation, and endure a parallel Federal appeal, and chase down petitioner to finally bring this case to a close. I welcome the Court's questions. How exactly does 1367 apply to a Section 9 application where there are no apparent claims? Where are the claims in a section, in an application under Section 9? Well, I think it applies exactly under Section 1367. You have an existing Federal case which has original jurisdiction. The Section 9 claim, if you look at it as a State law analog, as a contractual resolution of the claim as Badgerow did, then there would be supplemental jurisdiction over that State law claim. But it's not a State law claim. It isn't, which I think is all the more reason that there clearly is jurisdiction under 1367. 1367 isn't limited to State law actions. It's any claim that's so related to the original claim that it forms part of the same case or controversy. Well, but it's the same nucleus of operative fact. That's the test. How is this the same nucleus of operative fact? It seems to me completely two different sets of facts. I don't think so, Your Honor. It's the contractual resolution of the pending claim in the same case. Well, but, Mr. Geiser, I mean, what the – I think Mr. Unikowsky said this. What the second case is going to be about is something like did the arbitrator commit fraud. It's going to have nothing to do with the actual claims in the case. You're not allowed to relitigate those. You're not, but I don't think that matters. I don't think the test is are the elements coterminous. It's do they – are the claims so related they form part of the same case or controversy. The arbitration award is an affirmative defense in the case. It's hard to see how something can be an affirmative defense to the claim in the case without being related to that case. Yeah, I think that that's just not 1367's focus. 1367 says we're not going to look sort of as an abstract matter as to whether two claims were brought by the same parties or have certain features or are connected with each other in a certain way, other than one particular way, which is are the facts the same in these two claims. And the facts are not going to be the same in these two claims. Well, not all the facts, but you're still asking this is a contractual resolution of the claim that is pending. It's like saying that the judgment in a case is somehow unrelated to the original claim that produced the judgment. I think it doesn't have to be the same. We absolutely agree with my friend that these claims will not overlap. Often they have nothing to do with each other. Yeah, common nucleus of operative fact, and often they have nothing to do with each other. I would say almost always they have nothing to do with each other. How could that possibly be a common nucleus of operative fact? Well, it's not that every fact has to share the same original atom. It's the is there a common nucleus of operative fact? It's the great, great grandchild of the original claim kind of attenuated on. I mean, is it a claim? I mean, you characterize it as an affirmative defense, not a counterclaim, not a subsidiary claim. It doesn't seem like it's a claim. Well, it's resolving. I think it is resolving the claim in the sense that it is contractually disposing of the claim that has been brought. Now, I will say that there's an entirely different way to look at this. And part of the problem is that the FAA's court has acknowledged it is unique. We have an unusual situation where we have a Federal right under a Federal statute that doesn't give rise to Federal jurisdiction. And one analog is to say that the arbitration award is like a contractual settlement. So then confirming the award under the FAA, even though it's a Federal statute, is like resolving a State law contract dispute, sort of like Kekkonen. Another analog, though, is just to say this is the Federal directive on how a court decides what to do when the claim that's pending before it is now settled. So in the same way that Congress can provide rules of decision in Rule 23 to say if you're going to settle a class action, do you accept the settlement or not, or attach conditions to Rule 41, or do exactly what the court contemplated could have happened in Kekkonen. And if that's the way you're looking at it, are you drawing on original jurisdiction then? Yes. I mean, that's not a supplemental jurisdiction idea. Then we don't need supplemental jurisdiction. Right. Which is why we offer two competing paths in our brief that lead to effectively the same result. It's not ancillary jurisdiction, just to clarify. You're saying that the original jurisdiction, the 1331 hook, is carrying you all the way through. I think that is one way, I think, and a sensible way to look at it. I think it's actually the way that Cortez Byrd was contemplating, saying, of course, once you have an original case and you state it under Section 3, then of course you have jurisdiction to resolve what's a motion in the pending case, just as Justice Kagan and Justice Jackson pointed out, to decide what to do with that contractual resolution of the single pending claim. You heard his response on Cortez Byrd. Do you want to, your friend, do you want to react to that? Sure. So I think, I think my friend is correct that Cortez Byrd was citing Marine Transit, which is a Section 8 case. But Cortez Byrd was not a Section 8 case. So the way I read Cortez Byrd, and I think the way the courts have read Cortez Byrd, is the court was importing this common sense, intuitive proposition that happened to arise in the Section 8 context and putting it into the Section 9 through 11 context. And Cortez Byrd, by the way, was a 2002 decision. It's been decades on the books. Courts have construed it exactly the same way. It was only until the Fourth Circuit. Most of the courts have gone that way, right? Well, I think. Most of the courts have appeals. I think every court has gone that way. The only one that hasn't was the Fourth Circuit, which, with all due respect to the Fourth Circuit, I think just profoundly misread Badreau. That's why I said most. Yes. And that is, and in fact, when we say most, that is effectively, as far as we're aware, the only court that has gone the other way. I'm not aware of a single court before Badreau that's gone the other way. Mr. Geiser, you've laid out two paths for us. One, the supplemental jurisdiction path, reliant on a statute that could never be accused of being overly precise. The other would be the original jurisdiction path. I know what your answer is going to be, and it's going to be they're both great, Your Honor, but which one do you think, if forced to choose, is the safer route? And why? I mean, I really do think that they're both great. And I do think that they both work. So that I don't know. Any lawyer who doesn't say that isn't worth his salt, you wish to win. And I understand that. But. I think that it really is that it's half, you know, half in one hand, half in the other. I would say that you could say it's part of the original jurisdiction. That's just a very easy way to resolve it. We're in the same pending case. We're trying to dispose of the original claims. Your brief, if I read your brief, your brief is a supplemental jurisdiction brief. Well, we did make both arguments. And we did supplemental jurisdiction. I mean, you made one in a couple of paragraphs, and you made the other in 50 pages. Well, we thought one. That might be a slight exaggeration. Well, no. We thought one was so obvious that we were trying to help the Court if it decided to go the other way. But I do think, though, that the reason that we were fronting 1367 is because of the analogy that the Court drew in Badreau, is that if you do think of this as a contractual resolution of the claim, and then you think of it as a dispute over that contractual settlement, then it does look like it's a little bit different. And I do think that they clearly arise out of the same ultimate, you know, common nucleus of operative fact. It's clearly the same case or controversy, because, again, it is literally resolving the single controversy before the case. Which is why, if you look at how courts typically dispose of these actions, if they do retain jurisdiction, as every court outside the Fourth Circuit does, is that they say, if we confirm the arbitration award, you enter judgment on the arbitration award and judgment on the underlying claim. You do it in one fell swoop, because it is effectively the same action. Can you respond to your friend's comments of picking up on Justice Breyer's dissent in Badreau about incentives? I think that it's really hard to see how there's an incentive to file an anchoracy suit for any number of reasons, including that courts' parties aren't doing that. Again, Cortes-Byrd's language, and, you know, my friend can quibble whether it was overstated or improper, but Cortes-Byrd's language was unequivocal. If you imported that sentence into this decision, you could write a one-page opinion with a holding that says we've resolved this in Cortes-Byrd. That was in 2002, and there hasn't been a single identified case of someone filing an anchorsuit. And I think it's for similar reasons that Justice Sotomayor pointed out. It's a very odd litigant who is choosing an original venue not to litigate the case and not to compel arbitration, which is sometimes heavily contested, and that's what you'd be worried about, but thinking months or years down the road, what is this going to look like once we get that award? Do I want to confirm it or vacate it? And I'd rather be in federal court, so I'm going to file this preemptive federal action. And for some parties, it's not even an option. If you're a plaintiff and you file the original lawsuit to litigate, then it's not even clear. You might have, first under Morgan v. Sundance, you might have forfeited your arbitration rights because you're trying to litigate. And if the defendant doesn't move to compel arbitration, you're then out of luck. I mean, you showed up there. It's your lawsuit. So I don't think that those incentives actually play out. And if you're concerned about the practical consequences, I would look at the practical consequences of a case where a defense position would lead courts and litigants. It would create this odd situation where a party finishes in federal court after the stay. Now, apparently, they have to – the federal court will either dismiss the case without knowing whether those claims are actually resolved or not, or they stay the case to wait, as my friend said, potentially several years for the post-arbitration motions to play out in state court. Now, if the court – if the federal court does dismiss the case, now we have an even worse situation. Now, we have parallel proceedings. You have a federal appeal potentially contesting the pre-arbitration motion to compel arbitration because you can't take that until you have a final judgment in federal court. And then you have the same litigants going to state court to challenge what happened in the arbitration itself. So instead of having one proceeding up and running where parties have already paid a filing fee, they've found the defendant, they've effectuated service, they've maybe fought about venue, they've fought about personal jurisdiction, everything is up and running where you can resolve it in one proceeding, take one appeal. It's nice, neat, and tidy. Instead, you have now competing litigation and separate tracks in different court systems. I think – I don't think that's what Congress intended. I think that would create what Cortes-Byrd described as, you know, attributing to Congress a taste for the bizarre, and I do think that would be a bizarre situation. I agree with you that it seems more practical and tidy to do it the way that you just described. I'm wondering if you fronted the 1367 argument because in some ways it provides – I mean, I still struggle with the common nucleus of operative fact and exactly where is the claim issues. But it provides a theoretical grounding. When I'm trying to think about 1331 just by itself, I'm trying to figure out what in 1331, if I'm blinded, I'm taking 1367 out of it, justifies the adjudication of this separate contract dispute. I think it would be exactly the same way that when a court invokes, say, Rule 23E, it doesn't say do I have separate jurisdiction to decide whether to accept this settlement or not. Or whether in the Rule 41 context, do I have jurisdiction to decide whether to retain, you know, jurisdiction over the settlement to police it or to put it in the decree. I think it is part of the original power to dispose of the claim. And so under that formulation, we're thinking of it more as a motion than a claim, which would be inconsistent with the 1367 theory, right? Debatably. I think 1367, I think, has been described as quite broad. I think it's pretty capacious. I think it can cover lots of things. But luckily for us, Section 6 under the FAA says treat these as motions. So if you want to treat this as a motion covered by original jurisdiction, you have a very easy path to do it. It's consistent with Cortez-Byrd. It's consistent with the fact that Section 6 says treat this as a motion. I think it's even consistent with Kekkonen. And again, just to be clear, Kekkonen was dealing with a far more aggressive assertion of ancillary jurisdiction. That was a dismissed case. And the parties were trying to get the Court to re-invoke jurisdiction to decide something else. Okay. Well, let's talk about Kekkonen. What about Kekkonen's kind of bucket, too, where Kekkonen says, well, it would be different if the Court had reserved in the dismissal the authority to enforce the terms of the settlement? You didn't push that particularly hard. Why? Well, we did. And I'm sorry if it wasn't clear that we did. Here, it's even better. You don't have a dismissal. You have existing pending claims in a pending case. So Kekkonen, again, is a much harder case. There the Court is saying, I'm going to dismiss this action and I'm going to retain jurisdiction just in case something happens down the road. Here we have pending Federal claims. And if you – and you don't even know what to do with these claims. I think with all due respect to my friend, I think he's incorrect. To dismiss the case without knowing whether the arbitration award will ultimately stand doesn't make any sense. If the award is ultimately vacated, the parties could very well say, you know what, that was a waste of time. Let's just litigate in court. So is ancillary jurisdiction of the sort – ancillary enforcement jurisdiction of the sort that Kekkonen talks about applicable here? Is that a coherent way to think about this? I think you could. Now, I do think that this raises a slight complexity about to the extent 1367 has displaced or captured ancillary jurisdiction. But I think the very fact that Kekkonen contemplated that a court could retain jurisdiction to decide those subsequent settlement disputes suggests that this would be covered then by 1367. Well, that's why I said enforcement jurisdiction. I think that's different because nobody really disputes that a court could exercise enforcement – ancillary enforcement jurisdiction over, say, a contempt proceeding. So that would be different. It wouldn't be subsumed by 1367 the same way. We think that works perfectly well. And I think it's a sensible way to look at this. I do want to address this very quickly, the Section 8 argument about does the text of Section 8 somehow preclude jurisdiction under 1331 or 1332 or 1367? And I think it quite clearly doesn't. Section 8 is a maritime provision. And it starts off by saying notwithstanding anything else going on – so this is Congress's attempt to say we're creating a self-contained unit to deal specifically with Admiralty, and we're going to provide specific rules for that context. In order for that to preclude the assertion of jurisdiction elsewhere – because, again, we're not relying on the FAA for jurisdiction, we're relying on Title 28 – it would have to show that Congress in Section 8 was thinking I'm going to foreclose jurisdiction for every non-maritime case, the overwhelming swath of cases that arise under the FAA, simply by creating a specific rule of decision for that narrow context. Kagan. Mr. Greiser, just going back to this, oh, it's just a motion in a case, if you have jurisdiction in a case, of course you have jurisdiction over this, too. I mean, this is a very unusual kind of motion, right? It's a motion which could have been brought as a freestanding suit, which is essentially a freestanding suit, and a freestanding suit in which there would have been no jurisdiction. So notwithstanding that there's this sort of like unusual posture in which it appears as like a motion in another suit, we all know that it's a different suit, and a different suit in which there is no jurisdiction. So why do you – why does that carry you home? Well, I think it's not quite just an entirely different suit because, again, it's a motion with a different nature of claim to resolve the original pending claim. So I do think, again, just like Rule 23e is not a different suit, the party settled class claim. What I mean of it as a different suit is it's a bunch of contract claims. Let's say it's about like the arbitrator committed fraud and so my – the contract is invalid. That's what this suit is. That's what this motion is. Call it whatever you want. That's what this thing is. And that has nothing to do with the employment action that's kicked off this whole thing. Except for the fact that it is resolving the employment action that kicked off this whole thing. So, again, that's why I think it would be – it's really hard to say that resolving a claim is unrelated to the claim. Even if the reason you resolved it, maybe you settled because they gave you – they offered you a lot of money or they gave you something that you wanted. That has nothing to do with the underlying factual allegations. It's still resolving the claim. And that – I think that shows why it's part of the same case or controversy. I mean, it is literally resolving the case or controversy. And, again, I think a contrary view on that would say that an affirmative defense to a claim in a case doesn't arise or relate to that same case. Which – it's hard to even articulate the concept because it just doesn't make much sense. But, again, I think that's why there – we tried to offer two different paths in the brief because depending on which way you look at it, we're dealing with this odd hybrid that the FAA has set up. I mean, again, no one has ever applauded Congress for creating, you know, the world's cleanest statute. It's five pages of the U.S. Code. I think this Court is burdened with two or three cases a year, it seems, under the statute, going back I don't know how many years. But looking at it here, I think what Cortes-Byrd acknowledged, you know, two decades ago still holds. Of course, if you have jurisdiction to stay the case under Section 3, you have jurisdiction to process it at the end of the day. Roberts. Thank you, counsel. Justice Thomas, anything further? Justice Alito? Justice Kagan? Justice Gordon? Justice Barrett, anything further? Justice Jackson? Thank you, counsel. Thank you. Rebuttal, Mr. Yunenkowski. Thank you, Your Honor. I'd like to first begin with the discussion of Section 1331, which didn't occupy much of the briefing, but did occupy much of the discussion this morning. I don't think that confirming the arbitration award can be justified under Section 1331 because that judgment is not the resolution of the original claim. The original claim was a Federal employment claim, and the resolution of that claim is that the claim cannot proceed in Federal court because the parties agreed to arbitrate that claim. So just as a court dismisses a claim based on res judicata or release when it turns out that the parties have adjudicated the case in a different form, the appropriate resolution of the Federal claim is to dismiss it because the Federal court can't hear it when it's being decided elsewhere. But confirming the arbitration award is different. It's transforming the arbitration award into a judgment, and the practical difference there is that it allows Respondents to execute a money judgment against Petitioner. So what happened here is that the parties agreed to arbitrate, and then this arbitrator entered the sanctions award, which is a money judgment against Petitioner, and then confirming the award transforms that contractual resolution of the claim into a Federal judgment. And that's not a Federal judgment. The money judgment against Petitioner, which is the real practical effect of confirming this award, is not resolution of the original claim. It's transforming the parties' agreement to adjudicate this in a contractual method into a Federal judgment. That's why I think extra jurisdiction is needed. Section 1331 doesn't do the trick. And so then you get to Section 1367, and as some of the questions from the bench today made clear, there is no common nucleus effect. I think Kokanen is directly on point on this issue. I understand in Kokanen there is a dismissal rather than a stay, but as to the first head, as Kokanen called it, of ancillary jurisdiction, the Court said it, quote, permits, quote, disposition by a single court of claims that are in varying respects and degrees factually interdependent, which is very similar to the 1367 analysis. And then the Court held that the facts underlying Respondent's dismissed claim for breach of agency agreement and those underlying its claim for breach of settlement agreement have nothing to do with each other. It would neither be necessary nor even particularly efficient that they be adjudicated together. And that reasoning is right on point here, because at core, the arbitration award is similar to a breach of settlement agreement claim. It's a contractual way of resolving a dispute. And the core insight from Kokanen is parties that agree to resolve a dispute via contract, who later dispute that contractual resolution, are adjudicating a different dispute from the underlying federal dispute. I'd just like to say a few words about Cortes-Byrd. You know, the Court has said that it, the Court has cautioned against, you know, giving too much credit to drive-by jurisdictional rulings. And I think this is just the canonical case of a drive-by jurisdictional ruling. So first of all, jurisdiction was conceded in that case under diversity jurisdiction. Also, there was no Section 3 stay at all. So the jurisdictional anchor issue was doubly not presented. Meanwhile, the Court was talking about what it had previously held in this case, marine transit, that everyone agrees is irrelevant. The Court was also talking about a venue issue, which was also conceded by one side in that discussion. And all of this in service of making an argument that's ultimately the argument we're making in this very case, which is that Congress would not have intended for a court's authority to hear a Section 9 or 10 stay application to depend on whether or not there's a preexisting suit on file. So I do understand that lots of lower courts have followed that statement from Cortes-Byrd, which makes sense. I think when a lower court sees a sentence like that in the U.S. reports, much like in the Royal Canin case, which presented a very similar scenario, the courts will often go along with it. That's essentially what happened here. But I think that, you know, this Court has, you know, the authority to check, as it establishes a holding. And I think it just doesn't when you look at the posture of that case as compared to this one. Finally, in terms of the practical effects that respondents identify, I don't think that they're that significant. I mean, what happens is after there's an arbitration award, you go to the federal court, and if a party says, look, we're planning to go to state court to confirm the award or vacate it, the federal court can say, look, okay, I'll wait to see whether or not the case ever comes back, and I'll just delay the dismissal a little bit longer. And they'll go to state court and litigate there. I mean, you know, parallel federal and state litigation happens every day in our system, in our federal system. And I don't think that the practical concerns here are any greater than they would be in any other case when you have parallel litigation across the federal and state systems. If there's no further questions, we'd ask the Court to reverse the judgment below. Thank you, counsel. The case is submitted.